Christopher Q. Pham, SBN: 206697
E-mail: cpham@criterioncounsel.com
Marcus F. Chaney, SBN: 245227
E-mail: mchaney@criterioncounsel.com
CRITERION COUNSEL, LAW CORPORATION
6355 Topanga Canyon Boulevard, Suite 326
Woodland Hills, California 91367
Telephone: (818) 888-7540
Facsimile: (818) 888-7544

Attorneys for Plaintiff
SEAN WORMUTH, M.D.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO / OAKLAND DIVISION**

| | |
|---|---|
| SEAN WORMUTH, M.D., an Individual,<br><br>Plaintiff,<br><br>v.<br><br>THE PERMANENTE MEDICAL GROUP, INC., a California Corporation, and DOES 1 - 10, Inclusive,<br><br>Defendants. | Case No.: 3:26-cv-14721<br><br>**COMPLAINT FOR DAMAGES:**<br><br>**(1) FEDERAL COPYRIGHT INFRINGEMENT [17 U.S.C. §501(a); 17 U.S.C. §106]**<br><br>**(2) BREACH OF NON-EXCLUSIVE ORAL LICENSE AGREEMENT**<br><br>**(3) ACCOUNTING**<br><br>**(4) DECLARATORY RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

COMES NOW, Plaintiff SEAN WORMUTH, M.D., to hereby file his Complaint against Defendant THE PERMANENTE MEDICAL GROUP, INC., and DOES 1-10, inclusive, and alleges as follows:

## PARTIES

1. Plaintiff SEAN WORMUTH, M.D. (hereinafter "Dr. Wormuth") is now, and was at the time of the filing of this Complaint and at all intervening times, an individual residing in the State of California and within the Northern District in the City of San Anselmo.

2. Plaintiff is informed and believes and thereon alleges that Defendant THE PERMANENTE MEDICAL GROUP, INC. (hereinafter "Defendant" and/or "TPMG") is a now, and was at the time of the filing of this Complaint and at all intervening times, a corporation duly organized and existing under the laws of the State of California with its principal place of business located in the State of California and within the Northern District in the City of Pleasanton.

3. The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants herein named as DOES 1-10, inclusive, are unknown to Plaintiff. Plaintiff, therefore, sues said Defendants by such fictitious names. When the true names and capacities of said Defendants have been ascertained, Plaintiff will amend this pleading accordingly.

4. Plaintiff is informed and believes and thereon alleges that Defendant, and DOES 1-10, inclusive, sued herein by fictitious names, are jointly, severally and concurrently liable and responsible with the named Defendants upon the causes of action hereinafter set forth and shall henceforth be referred to collectively as "Defendants."

5. Plaintiff is informed and believes and thereon alleges that at all times mentioned herein that Defendant, and DOES 1-10, inclusive, and each of them, were the agents, servants and employees of every other Defendant and the acts of each Defendant, as alleged herein, were performed within the course and scope of that agency, service or employment.

/ / /

/ / /

## JURISDICTION

6. This Court has federal subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§1331 and 1338 (a), in that the case arises out of claims for copyright infringement under 17 U.S.C. §501(a). This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §§1367(a) and 1338 (a).

7. General personal jurisdiction exists over Defendant because on information and belief, Defendant is a California corporation with its principal place of business in Pleasanton, California.

8. Venue is proper, *inter alia*, pursuant to 28 U.S.C. §1391(b), because on information and belief, a substantial part of the events or omissions giving rise to these claims occurred in this judicial district and has caused damages to Plaintiff in this district.

## INTRADISTRICT ASSIGNMENT

9. Pursuant to Rule 3-2(c) of the *Local Rules of Practice in Civil Proceedings before the United States District Court for the Northern District of California* ("Civil L.R.") and the Court's Assignment Plan, this is an Intellectual Property Action to be assigned on a district-wide basis.

10. Assignment to the San Francisco Division or Oakland Division would be appropriate, pursuant to Civil L.R. 3-2(d), because a substantial part of the events that give rise to Plaintiff's claims against Defendant occurred in Alameda County, California, where Defendant's principal place of business is located.

## GENERAL ALLEGATIONS

### Dr. Wormuth's Creation and Development of the Patient Assignment System (PAS)

11. Dr. Wormuth is a Board certified and licensed emergency medicine physician in the State of California.

/ / /

12. Plaintiff began his employment with Defendant in 2003 as an Emergency Room ("ER") Physician at the Kaiser Permanente Vallejo Medical Center. He is currently a partner physician of Defendant TPMG and employed as a Senior Emergency Room Physician at the Kaiser Permanente Santa Rosa Medical Center.

13. Dr. Wormuth has also been an avid software programmer since his high school years. He has extensive development experience with several programming languages, such as C#, Visual Basic, SQL, HTML, XML and JavaScript. He also has working coding knowledge of Java, JSON/REST API architecture, and PowerShell.

14. As an ER physician with over twenty-five years of experience, Dr. Wormuth saw the need to streamline and organize the process of patient assignment to ER physicians, and he took the initiative upon himself to develop a digital solution.

15. In 2007, in the Visual Basic programming language, Plaintiff designed, wrote, coded, created, and developed a web-based software application – originally named WILMA ("Wormuth's Internet Logical Matrix Assigner") – for assigning patients to ER physicians during his own unpaid, personal time and with no supervision, direction, control, compensation or reimbursement from Defendant and without use of any of Defendant's equipment, supplies, facilities or trade secrets.

16. In 2008, Dr. Wormuth launched the WILMA software application he personally designed, wrote, coded, created, and developed.

17. Dr. Wormuth later changed the name of his application from WILMA to "PAS," which is an abbreviation for "Patient Assignment System." The names WILMA and PAS are used interchangeably referring to the same software application owned by Dr. Wormuth.

/ / /

18. From 2008 through 2018, Dr. Wormuth hosted the web-based PAS application through his own personal account on Microsoft Azure Cloud, and he ran the PAS application through several domains and websites at https://kaisernsa.com, https://patientassignment.com, https://patientassignment.net, and https://csharpassignment.azurewebsites.net, which he also personally and solely named, purchased, created and managed.

19. When other Kaiser ER physicians and facilities heard about the success of Dr. Wormuth's PAS being used at the Kaiser Permanente Vallejo Medical Center, they also wanted to use his software application in their ER facilities.

20. As his personal time and expense of managing and maintaining the PAS grew, Dr. Wormuth requested a licensing fee from Defendant for its non-exclusive use of his PAS application.

21. In 2009, Defendant agreed to pay Dr. Wormuth the following licensing fees: $1,600.00 per month from Kaiser Vallejo; $800.00 per month from Kaiser Oakland; and $1,600 per month for the launch of PAS in any additional Kaiser ER locations.

22. From 2013 through 2015, Dr. Wormuth rolled out PAS to approximately fifteen (15) Kaiser ERs in Northern California, all while he continued to host the PAS on his personal cloud account and through his own domains and websites at his own expense.

23. In an email dated July 1, 2015, from Dr. Jeffery Hong, Associate Chief of Emergency Kaiser Oakland Medical Center, and Chair of Credential and Privileges Committee, to Dr. Daniel Navarro, Chief of Imaging Informatics TPMG, Dr. Hong requested that TPMG internally host WILMA stating that, "The program was coded/written by one of our ED physicians in Vallejo, Dr. Sean Wormuth, and he has the program hosted on a non-Kaiser, commercial server that recently has become less reliable than desired."

24. With the growing demand for PAS, and the increasing demand on Dr. Wormuth's time to maintain and host the application, Dr. Wormuth requested an increased licensing fee from Defendant.

25. In an email dated February 23, 2017, Dr. Peter Chau, Chief of Emergency Medicine, stated to Dr. Wormuth that, "There is no way they can use your work for free. It's just a matter of negotiating the money & time. I don't mind lobbying for you but I'd [sic] to know your lowest and ideal compensation for 1) managing the sites 2) one time purchase fee & let someone else do the ongoing management."

26. In the beginning of 2018, Dr. Wormuth coded and wrote the PAS derivative work in the C# programming language for added functionality and flexibility elements to accommodate several emergency room locations. The C# version of PAS was based on the original work Dr. Wormuth wrote in Visual Basic.

27. In 2019, Dr. Wormuth advised Defendant that without an increase in licensing fees, he would only authorize TPMG to use his PAS application only through the end of the year, at which time he intended to shut down the software application.

28. Dr. Wormuth and Defendant then entered into and agreed upon a non-exclusive oral license whereby Dr. Wormuth would receive the following from Defendant in return for Defendant's continued use of the PAS software application: 1) a licensing fee equaling 20% of his then existing salary as administrative time in lieu of working ER shifts; and 2) Defendant taking over hosting and paying for the domains and websites set up by Plaintiff to host the software application.

29. Dr. Wormuth justifiably relied on Defendant's agreement to pay him a licensing fee for its use of the PAS.

30. Based on this non-exclusive oral license agreement, in November 2019, Dr. Wormuth migrated the C# version of PAS to the TPMG Technology Group's ("TTG") servers.

31. Dr. Wormuth assisted Defendant to migrate his programs onto the TTG servers, and he also authored the "TPMG Technology Group Patient Assignment (TPA) User Manual" that was distributed to TTG and used throughout Defendant's Northern California ER departments.

32. In an email dated November 18, 2019, Dr. David Roth, Assistant Chief of Staff of Emergency Services – Diablo Service Area, and Chair of NCAL Emergency Medicine, wrote that, "On the night of the transition all current sites (https://patientassignment.net, and https://csharpassignment.azurewebsites.net) will become unavailable at the start time. Once the data is copied all facilities will start using the new URL tpa.tpmg.kp.org/xxx/assign."

33. In a startup guide prepared by Shweta Srivastav, who was the Business Analyst for TTG, Defendant's acknowledged that its software was substantially the same or based on Dr. Wormuth's original work in PAS as follows:

# TPMG Patient Assignment (TPA)

## What's TPA?

The Patient Assignment System (PAS/WILMA) that was written and supported by Dr. Sean Wormuth has been ported over to TPMG Technology Group. The product has been renamed TPMG Patient Assignment system (TPA).

## How are PAS/WILMA and TPA different?

The bulk of the functionality and user interface remains the same between the 2 systems. However, since TPA is on TTG servers and in a more secure environment, there are a few updates.

34. By an email dated November 16, 2024, Dr. Robert Greenberg, TPMG's Physician-In-Chief, confirmed that the payment of administrative time ("AR Units") to Dr. Wormuth was "authorized originally by Dr. Ed Lee and reviewed in detail with Drs. Hoberman and Gayre in their transitions with the full authorization for Dr. Wormuth's continuing role" in the PAS.

/ / /

35. Dr. Wormuth and Defendant honored and performed under the terms of this non-exclusive oral license agreement from 2019 through 2025. He continued to monitor, maintain, and update the PAS on the TTG servers.

36. In August 2025, Defendant advised Dr. Wormuth that it was no longer going to pay license fees to him, but that it intended to continue to use his PAS software application. No explanation or justification was provided by Defendant to Dr. Wormuth for reneging on the terms of their license agreement.

37. Dr. Wormuth's computer program is copyrightable subject matter, and Plaintiff has secured copyright registrations for his PAS computer program, specifically, the Patient Assignment System written in Visual Basic (Reg. Nos. TXu 2-527-477 (registered on 2/19/2026) and TXu 2-539-555 (registered on 2/25/2026)) and the derivative work written in C# (Reg. No. TXu 2-562-464 (registered on 8/11/2026)), with the United States Copyright Office. A true and correct copy of Plaintiff's Certificate of Registration for Visual Basic PAS registered on February 19, 2026 is attached hereto and marked as **Exhibit A**. A true and correct copy of Plaintiff's Certificate of Registration for Visual Basic PAS registered on February 25, 2026 is attached hereto and marked as **Exhibit B**. A true and correct copy of Plaintiff's Certificate of Registration for C# Derivative-Work PAS registered on August 11, 2026 is attached hereto and marked as **Exhibit C**.

38. Dr. Wormuth has at all relevant times owned the exclusive rights in the original PAS computer program he wrote in the Visual Basic programming language and the derivative work of PAS he coded in C#, including the exclusive rights to reproduce the program, prepare derivate works based upon it, and distribute copies of it.

**TPMG's Intellectual Property Policy**

39. Section 6.P of Defendant's TPMG Policy Manual states that, "Any inventions, discoveries, improvements, methods, processes, ideas, formulas,

designs, techniques, information, and works of authorship . . . conceived, or first reduced to practice, discovered, created or developed (any 'Made')" by a Senior Physician (alone or with others), "which do not involve, or only involve an incidental, use of TPMG's resources or are excluded from assignment by the provisions of Section 2870 of the California Labor Code," are expressly defined in Defendant's own intellectual property policy as "Excluded IP." A true and correct copy of Section 6.P Intellectual Property to the TPMG Policy Manual is attached hereto and marked as **Exhibit D**.

40. The TPMG Policy Manual further states that all TPMG physicians agree "as a condition of your continued engagement by TPMG, to execute additional or confirmatory assignment of your interests in all Subject IP to TPMG, which for clarity expressly does not require assignment of any Excluded IP." Subject IP is defined as "[a]ll IP Made by you (alone or with others) from any material use of TPMG's … facilitates or resources, including, among other things, (1) IP arising from Internal Projects (described above), (2) IP using or incorporating TPMG's … patient data or other proprietary information or data, and (3) IP comprising improvements, modifications or derivatives of TPMG's existing proprietary information, materials, software or technologies (including digital health tools).

41. Section 6.P of the TPMG Policy Manual also cites to *California Labor Code* §2870, which states that "(a) Any provision in an employment agreement which provides that an employee shall assign, or offer to assign, any of his or her rights in an invention to his or her employer shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities, or trade secret information … ." Section 2870(b) provides that, "To the extent a provision in an employment agreement purports to require an employee to assign an invention otherwise excluded from being required to be assigned under subdivision (a), the provision is against the public policy of

this state and is unenforceable."

42. In July 2026, Dr. Wormuth attended his mandatory annual training at TPMG, which included a program on TPMG's intellectual property policies and procedures. The "2026 TPMG Physician Annual Compliance Training" reinforced the TPMG Policy Manual by stating that, "IP developed by physicians on their own time, without the use of material resources of TPMG or KP, belongs to the physician."

43. Defendant has no claimed ownership in the PAS application, has not asserted that the PAS application is a Subject IP under its intellectual property policy, and has not demanded that Plaintiff assigns his rights in PAS to Defendant. There exists no written or signed agreement between Dr. Wormuth and Defendant for the transfer or assignment of Plaintiff's ownership interest in PAS to Defendant or any other party.

44. Defendant had access to both the Visual Basic and C# copies of Dr. Wormuth's PAS computer program and Defendant's authorization to access or use the PAS computer program ended in August 2025.

45. Dr. Wormuth did not authorize Defendant to reproduce the PAS computer program, prepare derivative works based upon the PAS computer program, distribute copies or derivative versions of the PAS computer program, or otherwise exploit Dr. Wormuth's copyrighted expression.

**<u>TPMG Has Failed to Comply With Dr. Wormuth's Demand Letters</u>**

46. On March 3, 2026, counsel for Plaintiff issued a demand letter to Defendant TPMG stating that its "continued use of the PAS without Dr. Wormuth's authorization and without payment of the agreed upon licensing fee constitute copyright infringement, breach of contract, and unfair business practices under California law."

47. Defendant, however, continued to use Dr. Wormuth's PAS or a derivative copy of PAS without his authorization and without paying him any

compensation.

48. On June 1, 2026, counsel for Plaintiff issued a second supplemental demand letter to TPMG stating that, "TPMG's continuing use of the PAS since my client's demand letter dated March 3, 2026, constitutes willful and intentional infringement. Dr. Wormuth's wish is to resolve this infringement claim by negotiating a reasonable settlement with TPMG that would include the grant of a non-exclusive license agreement."

49. On August 7, 2026, counsel for Defendant represented that Defendant was no longer using the Visual Basic version of the PAS software written by Dr. Wormuth, and she insisted that the current PAS software use was instead coded in C# in 2018 (the "Accused Work").

50. The Accused Work, however, is either Dr. Wormuth's own derivative work in the PAS computer program or a new derivative work, in whole or in substantial part, based on Dr. Wormuth's original PAS program created by Defendant without Dr. Wormuth's authorization. Dr. Wormuth has not granted or authorized Defendant to create any derivative works of his PAS program.

51. Dr. Wormuth's is the copyright holder of the PAS computer program in Visual Basic (Reg. Nos. TXu 2-527-477 and TXu 2-539-555), and the derivative work written in C# (Reg. No. TXu 2-562-464).

52. At the time of the filing of this lawsuit, Defendant continues to infringe on Dr. Wormuth's intellectual property rights in PAS by continuing to use PAS, or a derivative copy of PAS, at twenty-three emergency room locations, which includes two locations at the Mid-Atlantic Permanente Medical Group that TPMG licensed PAS to for a fee that was not paid to or shared with Dr. Wormuth.

/ / /

/ / /

/ / /

**FIRST CAUSE OF ACTION**

**(Copyright Infringement against Defendant THE PERMANENTE MEDICAL GROUP, INC. and DOES 1-10, Inclusive) [17 U.S.C. § 501(a); 17 U.S.C. §106]**

53. Plaintiff hereby incorporates by reference each of the other allegations set forth elsewhere in this Complaint as though fully set forth in this cause of action.

54. Dr. Wormuth is the exclusive owner of a computer program that is copyrightable subject matter and secured a copyright registrations for his Patient Assignment System (Reg. Nos. TXu 2-527-477, TXu 2-539-555, and TXu 2-562-464) with the United States Copyright Office.

55. Defendant did not seek and failed to obtain Dr. Wormuth's consent or authorization to use, license, and/or distribute the PAS computer programs protected by Plaintiff's copyrights or to create and develop the Accused Work, which infringes on the elements and expressions in Dr. Wormuth's copyrighted software programs.

56. Without permission and without payment of a previously agreed upon licensing fee, Defendant willfully used, licensed, and/or distributed copies of Dr. Wormuth's computer software in violation of the exclusive rights in the original work and in all derivative works afforded under his registered copyrights.

57. Without permission, Defendant intentionally and knowingly used, licensed, and/or distributed Dr. Wormuth's protected copyrighted works within various Kaiser ERs and to third-parties, or created and developed the Accused Work to use, license, and commercially exploit the programs.

58. Defendant has violated Dr. Wormuth's exclusive rights by reproducing protected expressions from his original Visual Basic PAS software program or the C# derivative work he created; preparing the Accused Work as an unauthorized derivative work; and distributing, offering, licensing, selling, and/or otherwise exploiting the Accused Work.

59. Defendant continues to willfully violate and infringe on Dr. Wormuth's copyrighted works after two cease-and-desist demand letters issued to Defendant in March and June 2026.

60. Defendant's acts as alleged herein, constitute infringement of Dr. Wormuth's copyrights, including his exclusive rights to reproduce, distribute, license and/or sell such protected material, and to prepare derivative works based upon his copyrighted computer programs.

61. Defendant's willful copyright infringement as alleged herein has caused and will continue to cause substantial and irreparable harm to Dr. Wormuth and has and will continue to cause damage to him. Dr. Wormuth is therefore entitled to injunctive relief, actual damages, Defendant's profits, statutory damages, and reasonable attorney's fees and costs.

62. As a direct and proximate result of Defendant's infringement, Dr. Wormuth has suffered and will continue to suffer damages in an amount to be proven at trial.

**SECOND CAUSE OF ACTION**

**(Breach of Non-Exclusive Oral License Agreement against Defendant THE PERMANENTE MEDICAL GROUP, INC. and DOES 1-10, Inclusive)]**

63. Plaintiff hereby incorporates by reference each of the other allegations set forth elsewhere in this Complaint as though fully set forth in this cause of action.

64. In or around 2018, Dr. Wormuth and Defendant entered into a non-exclusive oral license agreement which permitted Defendant to use Plaintiff's PAS software application in exchange for the payment of a licensing fee.

65. Dr. Wormuth has performed all of his obligations under the terms of this agreement, except those from which he has been excused and/or prevented from performing on account of Defendant's breach.

66. Defendant has failed to perform all of its obligations under the terms of the agreement and has not been excused and/or prevented from performing its

contractual obligations.

67. Defendant has breached the Agreement by continuing to use PAS but failing to pay to Dr. Wormuth the agreed upon licensing fee, by creating the Accused Work without Dr. Wormuth's authorization, and by sublicensing and distributing PAS without his authorization and without payment to Dr. Wormuth.

68. Defendant has breached the Agreement by continuing to use, license and/or distribution Dr. Wormuth's copyrighted protected PAS computer program within Kaiser ERs and to third parties, or by creating and developing an unauthorized derivative work based upon Dr. Wormuth's PAS computer programs, without Dr. Wormuth's consent.

69. Defendant has intentionally and knowingly breached its license agreement with Dr. Wormuth by continuing to use PAS and exploit the Accused Work after receiving two cease-and-desist demand letters in March and June 2026.

70. Defendant is using Dr. Wormuth's PAS, or a derivative copy of PAS, in at least twenty-one (21) TPMG ER locations in California. In addition, Defendant is licensing use of Plaintiff's PAS to Mid-Atlantic Permanente Medical Group which is using PAS at two (2) of its ER locations outside of California.

71. As a direct and proximate result of Defendant's past, current, and ongoing breach of the terms of the non-exclusive oral license agreement with Plaintiff, Plaintiff has suffered and continues to suffer damages in an unknown amount but of no less than $862,500.00 USD in unpaid licensing fees.

## THIRD CAUSE OF ACTION

**(Accounting against Defendant THE PERMANENTE MEDICAL GROUP, INC. and DOES 1-10, Inclusive)]**

72. Plaintiff hereby incorporates by reference each of the other allegations set forth elsewhere in this Complaint as though fully set forth in this cause of action.

73. A fiduciary relationship exists between Dr. Wormuth and Defendant given both their high-level partner and senior employee/employer relationship and

the separate business relationship they entered into in connection with Plaintiff's PAS computer program. Under the terms of their license agreement, Defendant was given the authority to manage, control, and hold the financial assets, books, records, and accounts of the business operations.

74. Dr. Wormuth is informed and believes, and thereon alleges, that Defendant has used, licensed and/or distributed his copyright protected PAS computer programs without payment of any license fee and improperly managed the business assets, wrongfully withheld distributions, and diverted funds for its own use without the knowledge or consent of Dr. Wormuth.

75. The exact amount of money due from Defendant to Dr. Wormuth is currently unknown to him and cannot be ascertained without an accounting. The information, receipts, ledgers, and accounts necessary to determine the exact balance due are within the exclusive knowledge and control of Defendant.

76. Dr. Wormuth has demanded that Defendant provide a full and complete financial accounting in connection with the business operations and PAS. Defendant has failed and refused, and continues to fail and refuse, to provide such an accounting.

77. Dr. Wormuth lacks an adequate remedy at law because the financial records and transactions of the business are too complex, heavily entangled, and voluminous to be resolved by a standard claim for fixed legal damages.

## FOURTH CAUSE OF ACTION

**(Declaratory Relief against Defendant THE PERMANENTE MEDICAL GROUP, INC. and DOES 1-10, Inclusive)**

78. Plaintiff hereby incorporates by reference each of the other allegations set forth elsewhere in this Complaint as though fully set forth in this cause of action.

79. Defendant's actions as described herein constitute violations of 17 U.S.C. §501(a), 17 U.S.C. §101, and 17 U.S.C. §106, and are unlawful, unfair and/or fraudulent business acts or practices under California law.

80. An actual controversy has manifested in that Defendant will continue to infringe on Plaintiff's Copyrights, and will continue to use the Accused Work, unless its actions are declared unlawful and enjoined by the Court.

81. Dr. Wormuth requests judicial determination that Defendant has committed the aforementioned acts; that Plaintiff has no adequate remedy at law; that there is a present controversy between Plaintiff and Defendant for which a declaratory judgment should be entered to determine that Defendant's conduct constitutes infringement of Plaintiff's Copyrights pursuant to 17 U.S.C. § 501(a) and 17 U.S.C. §106; and that such conduct by Defendant constitutes unlawful, unfair and/or fraudulent business acts or practices.

## PRAYER OF RELIEF

WHEREFORE, Plaintiff SEAN WORMUTH, M.D., prays for judgment against Defendant THE PERMANENTE MEDICAL GROUP, INC., and DOES 1-10, inclusive, and each of them, as follows:

1. For an award of Defendant's profits and Plaintiff's damages in an amount to be proven at trial for copyright infringement under 17 U.S.C. §501(a);

2. In the alternative to actual damages and Defendant's profits for the infringement of Plaintiff's Copyrights pursuant to 17 U.S.C. §504(b), for statutory damages pursuant to 17 U.S.C. §504(c), which election Plaintiff will make prior to the rendering of final judgment;

3. For consequential and compensatory damages;

4. For an injunction by this Court prohibiting Defendants from engaging or continuing to engage in the unauthorized use of any copyright or other intellectual property right of Plaintiff; acts of copyright infringement; and any other act in derogation of Plaintiff's rights;

5. For an order from the Court requiring that Defendants provide a complete accounting and for equitable relief, including that Defendants disgorge and return or pay their ill-gotten gains obtained from distribution of the Accused

Work, including the amount of money that should have been paid to Plaintiff if Defendants complied with their legal obligations, or as equity requires;

6. For a declaration and finding from the Court that Defendant and its Accused Work have infringed on Plaintiff's copyrighted works;

7. For an order from the Court that an asset freeze or constructive trust be imposed over all monies and profits in Defendants' possession which rightfully belong to Plaintiff;

8. For destruction of the infringing articles in Defendants' possession under 17 U.S.C. §503;

9. For damages in an amount to be proven at trial for unjust enrichment;

10. For Plaintiff's reasonable attorney's fees under 17 U.S.C. §505;

11. For all costs of suit; and

12. For such other and further relief as the Court may deem just and equitable.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the *Federal Rules of Civil Procedure*, Plaintiff SEAN WORMUTH, M.D. respectfully demands a trial by jury in this action.

DATED: November 24, 2026

CRITERION COUNSEL,
LAW CORPORATION

By: _/s/ Marcus F. Chaney______
Christopher Q. Pham
Marcus F. Chaney
Attorneys for Plaintiff
SEAN WORMUTH, M.D.